## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

RODNEY T. JONES
507 Orchid Court,
Edgewood, MD 21040

        Plaintiff,

    v.

**ABERDEEN PROVING GROUND
FEDERAL CREDIT UNION**
1321 Pulaski Hwy
Edgewood, MD 21040-1502
      Serve On:
      Don W. Lewis
      1321 Pulaski Hwy
       Edgewood, MD 21040-1502

**EQUIFAX INFORMATION SERVICES,
LLC,**
1550 Peachtree Street, NW
Atlanta GA 30309
Serve On-
    Csc-Lawyers Incorporating Service
    Compan
    7 St. Paul Street, Suite 820
    Baltimore MD 21202

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**
505 City Pkwy West
Orange CA 92668
Serve On:
    The Corporation Trust, Incorporated
    2405 York Road, Suite 201
    Lutherville Timonium MA 21093-2264

        Defendant.

Case No.: 1:21-cv-1915

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiff, RODNEY JONES ("Mr. Jones") files this complaint through undersigned counsel against Defendant ABERDEEN PROVING GROUND FEDERAL CREDIT UNION ("APG"). This case challenges APG's illegal attempts to collect money that it is not owed.

1.     Previously, there was litigation between the parties whereby APG sued Mr. Jones and got a consent judgment.

2.     Mr. Jones paid the judgment in full, including post judgment interest.

3.     Despite the fact that the judgment was paid in full including all post judgment interest, and APG marked the judgment satisfied, APG continues to demand that Mr. Jones pay more, and continues to damage and threaten Mr. Jones' creditworthiness by falsely reporting that he owes APG money.

4.     APG's conduct is part of a pattern and practice of ignoring judicial decisions *to which it has itself consented* when they stand in the way of its financial interests. For example, in *Manto v. Aberdeen Proving Ground Federal Credit Union,* Case No. C-12-CV-20-000795 (Cir. Ct. Harford Co.) APG dismissed a debt collection action with prejudice, but continued to attempt to collect the subject debt from the plaintiff, including threats to file a new collection lawsuit – a step plainly prohibited by law.

5.     Here too, APG sought to go behind a judgment it actively sought,  in order to extract money from Mr. Jones that it was not entitled to.

6.     APG's false reporting and demands for payment have caused Mr. Jones damages, harms and losses including severe emotional distress, and damaged his creditworthiness, including interfering with his application for a new mortgage.

7.     Mr. Jones disputed APG's false reporting with credit bureaus Equifax and Experian, but neither conducted a reasonable investigation, and neither corrected APG's false reporting, choosing instead to believe APG over Mr. Jones.

## PARTIES

8.      Plaintiff is a resident of Harford County, Maryland.

9.      Defendant APG is a Federal Credit Union. Its principal office is in Harford County, Maryland.

10.     Defendant Equifax is a Georgia LLC. Its principal office is in Atlanta, Georgia. Defendant Equifax does business throughout the United States.

11.     Defendant Experian is a California corporation. Its principal office is in Orange, California.

## JURISDICTION

12.     This court has jurisdiction over Plaintiff's FCRA claims pursuant to 15 U.S.C. § 1681p.

13.     This court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTS

1.      On October 30, 2017, APG filed a debt collection action  in the Circuit Court for Harford County, Maryland, in case no. 12-C-17-002882 to collect what it alleged to be the whole amount owed on the second mortgage.

2.      On July 24, 2018 the court entered judgment against Mr. Jones in the amount of $34,515.89 plus pre- and post-judgment interest:

| Amount of Judgment: | $34,515.89 | | Total Indexed Judgment: | $34,515.89 |
|---|---|---|---|---|
| Comment: | Plus accrued interest through June 18, 2018 of $147.90; plus pre-judgment interest from June 19, 2018 through judgment at the contract rate of 9.24% ($8.7003 per day); post judgment interest at the statutory rate per annum. | | | |

3.      As a matter of law, when the judgment was entered, any amounts allegedly due on the second mortgage merged into the judgment. *Monarc Const., Inc. v. Aris Corp.*, 188 Md. App. 377, 394 (2009)("[A] simple contract is merged in a judgment or decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgment or decree") *quoting Jackson v. Wilson,* 76 Md. 567, 571 (1893); *c.f.* Restatement (2d) of Judgments § 18, cm a.

4.      In other words, as of July 24, 2018, the total amount due was the amount of the judgment ($34,515.89) plus pre-judgment interest of $147.90 and post-judgment interest at the rate of $8.7003 per day, and no more.

5.      Over the following three years, Mr. Jones paid in excess of $28,000.00 on the judgment.

6.      In early 2021, Mr. Jones was ready to pay off the judgment in its entirety, so he asked APG's attorneys, Silverman & Theologu ("Silverman") how much was left to pay.

7.      After much delay, Silverman on behalf of APG gave Mr. Jones two different figures. It said Mr. Jones owed $40,772.93 "for the HELOC" but only $12,563.25 on the judgment,  implying that the loan had not merged in the judgment.

8.      Mr. Jones paid the judgment in full – paying over $12,000.00 to satisfy it.

9.      APG filed a notice of satisfaction in the collection action. A Notice of Satisfaction is filed "[u]pon [the creditor] being paid all amounts due on a money judgment." Md. Rule 2-626(a). "A satisfaction of a judgment is an acceptance of full compensation for the injury" *Underwood-Gary v. Mathews*, 366 Md. 660, 663, 785 A.2d 708, 709 (2001)(internal quotation marks omitted).

10.      In other words, by marking the judgment satisfied, APG acknowledged

that Mr. Jones had paid everything he was obligated under the judgment *and under the contract* which merged into the judgment.

11.  Despite this, APG continued to false report that Mr. Jones owed more money to the Credit Reporting Agencies, and continued to demand that Mr. Jones pay it even more money.

## APG Falsely Reports the Debt to the CRAs

12.  Even before the satisfaction of the judgment APG falsely reported to the CRAs that Mr. Jones owed more money. For example:

    a.  APG reported to Equifax and TransUnion that Mr. Jones owed $40,682 to APG, with a scheduled payment of $736 and that the account was open and in collections;

    b.  APG reported to Experian that Mr. Jones owed $50,356 to APG, that the recent payment amount was $2,200 and that the account was open.

13.  After Mr. Jones satisfied the judgment, APG failed to report that the account had been paid in full.

14.  APG knew that the judgment was not for $40,682 as of January, 2021, and knew that it was not for $50,356 as of January, 2021, and knew that in fact it had been satisfied as of March, 2021.

15.  APG also knew that the judgment resolved all its claims against Mr. Jones in relation to the account. It therefore knew that the information it furnished was false.

16.  Mr. Jones disputed the false information furnished by APG with Equifax, Experian and Trans Union.

17.  Equifax received Mr. Jones's dispute on March 14, 2021.

18.  Experian received Mr. Jones's dispute on March 15, 2021.

19.     Trans Union received Mr. Jones's dispute on March 18, 2021.

20.     On information and belief, Equifax and Experian passed Mr. Jones's disputes on to APG in accordance with their statutory duties.

21.     Experian responded to Mr. Jones's dispute on March 26, 2021, advising that APG "has certified to Experian that the information is accurate."

22.     However, APG failed to update the account from its January 2019 status with Experian, despite many intervening payments, and the satisfaction of the judgment on the account.

23.     On information and belief, Experian failed to conduct a reasonable investigation of Mr. Jones' dispute. Mr. Jones' dispute included the notice of satisfaction of the judgment filed by APG, demonstrating to Experian that at least *some* change had occurred since 2019. Yet, Experian chose to blindly parrot APG's inaccurate response to the dispute.

24.     Equifax responded to Mr. Jones' dispute on March 26, 2021. The information reported had been changed, but was still inaccurate, showing a balance of $28,249.

25.     On information and belief, Equifax failed to conduct a reasonable investigation of Mr. Jones' dispute because it chose to blindly parrot APG's inaccurate response. APG's notice of satisfaction of judgment demonstrated that the debt had been paid. On information and belief, instead of properly investigating the matter, Equifax did no more than exchange automated, electronic dispute forms with APG.

26.     Mr. Jones' prospective mortgage lender, Lennar Mortgage, informed Mr. Jones that, because the APG account appeared as a recent collection tradeline on Mr. Jones' credit reports, and Mr. Jones disputed the accuracy of APG's reporting, Lennar

wanted to speak to APG about the problem.

27.   On April 16, 2021, Mr. Jones and Mr. Jones' loan officer, from Lennar Mortgage called APG. APG gave inconsistent explanations for the Experian reporting: that APG's attorneys had told it what information to furnish to the CRAs; that APG was obligated to report that the account was a collection account; then that the account was *not* a collection account and would be updated immediately.

## APG Demands Even More Money

28.   Even though Mr. Jones had paid the judgment, APG continued to seek payment from him.

29.   On March 16, 2021, APG called Mr. Jones, stating that he was late with his "March payment".

30.   APG called Mr. Jones daily thereafter to try to collect the debt.

31.   On March 31, 2021, APG called Mr. Jones demanding a payment and threatening that if he did not pay, APG would further damage his credit by falsely reporting that he had missed a payment.

32.   Mr. Jones was in the process of obtaining a new mortgage loan in order to buy a new house elsewhere. Mr. Jones' loan officer told him that the APG account was affecting his rate on the new mortgage and that there might be further questions about it.

33.   Mr. Jones reasonably believed APG's threat that it would report further false information, and that the further false information would increase the rate on his new mortgage.

34.   Mr. Jones therefore felt compelled to make the payment of $737 that APG demanded – despite the fact that APG had already filed a Notice of Satisfaction - in order to mitigate his losses and avoid further damage to his creditworthiness.

35.     APG told Mr. Jones to make the payment online via its member services system. APG told Mr. Jones that it would not report him adversely if he paid on that day (i.e. on March 31st), through member services. Mr. Jones  reasonably relied on APG's statements, and paid under protest in order to protect his creditworthiness.

36.     On April 1, 2021, APG called Mr. Jones again, and told him that his March 31st payment had not yet cleared, that it might take up to five days to clear, and that they were going to report that he had missed a payment.

## Damages

37.     Mr. Jones was damaged by Defendant's actions.

38.     In 2019, Mr. Jones sought to refinance his family's home, in part to get rid of the APG account. However, APG did not cooperate. Since April 2019, Mr. Jones has been offered less favorable terms for credit on numerous occasions because of APG's adverse credit reporting.

39.     In late 2020, Mr. Jones and his family wanted to move to a new house.

40.     Mr. Jones applied for pre-approval for a mortgage from two lenders, for a new-build home. The loan officers from both told Mr. Jones that APG's inaccurate reporting would, at the least, increase his interest rate, potentially costing Mr. Jones thousands of dollars over the life of the loan.

41.     Mr. Jones and his family did not want to wait for APG to correct its errors, especially since APG appeared committed to demanding more money than it was entitled to.

42.     In order to mitigate the damage APG's false reporting did to his creditworthiness, Mr. Jones made payments to APG, which APG claimed were due, but which were not due (since Mr. Jones had paid his whole debt to APG and the judgment

was satisfied).

43.     APG's false credit reporting caused one lender, Lennar Mortgage, to deny Mr. Jones a mortgage on the new build home. Lennar Mortgage was the builder's preferred lender. Lennar's denial meant that Mr. Jones was not eligible for $15,000.00 in incentives that he would otherwise have received from the home builder.

44.     A second lender, Homespire Mortgage, ultimately agreed to give Mr. Jones a mortgage, despite APG's false reporting. However, Mr. Jones worried constantly about being denied and losing his earnest money deposit because of APG's false reporting, until the transaction finally closed in late May 2021.

45.     Because of APG's false credit reporting and telephone harassment, Mr. Jones has suffered severe emotional distress both with and without physical manifestations.

46.     Mr. Jones has suffered physical manifestations of emotional distress in the form of sleeplessness and interrupted sleep, loss of weight, loss of appetite, nausea, headaches, crying, irritability, marital discord, difficulty concentrating on work and everyday affairs, a racing pulse, fear, anxiety and fainting.

47.     APG's conduct is part of a pattern and practice of ignoring judicial decisions *to which it has itself consented* and then collecting and attempting to collect money that is not owed.  .

48.     One example of APG's pattern and practice of engaging in illegal collection activity after they have settled a lawsuit is in *Manto v. Aberdeen Proving Ground Federal Credit Union,* Case No. C-13-CV-20-000649 (Cir. Ct. Harford Co.).

49.     In the *Manto* case, similar to in this case, APG consented to a motion to dismiss a debt collection action, but then it continued to attempt to collect the subject

debt from the plaintiff, including threats to ruin his credit and file a new collection lawsuit – a step plainly prohibited by law.

50.   Here too, APG sought to go disregard a judgment it actively sought and consented to,  in order to extract money from Mr. Jones that it was not entitled to.

## COUNT I –Maryland Consumer Debt Collection Act, Md. Code Ann. ("MCDCA"), Com. L. § 14-201 et seq. (APG Only)

51.   Plaintiff repeats the foregoing allegations as though fully set forth here.

52.   Defendant is a "collector" within the meaning of Md. Code Ann., Com. L. § 14-201(b) because it was attempting to collect an alleged debt arising from a consumer transaction.

53.   Defendant violated Md. Code Ann., Com. L. § 14-202(3) by disclosing or threatening to disclose information which affected Plaintiff's reputation for credit worthiness with knowledge that the information was false.

54.   Defendant violated Md. Code Ann., Com. L. § 14-202(8) by claiming, attempting or threatening to enforce a right with knowledge or reckless disregard that the right did not exist, namely the right to maintain the lien on the Property despite satisfaction of the judgment.

55.   Defendant violated Md. Code Ann., Com. L. § 14-202(11) by engaging in conduct that would be prohibited by the conduct provisions of the Fair Debt Collection Practices Act, namely attempting to collect money not owed, misstating the amount owed, falsely overstating the amount required to pay off the debt, and falsely claiming the right to maintain the lien dispite the satisfaction of the judgment

56.   Plaintiff was damaged as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A.  An award of actual damages to be assessed by the jury;

B.  Such other and further relief as Plaintiff's cause may require.

## COUNT II – Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. L. § 13-101 et seq. (APG Only)

57.     Plaintiff repeats the foregoing allegations as though fully set forth here.

58.     The Plaintiff is a "consumer" as defined by § 13-101(c)(1) of the MCPA, and the alleged debt on the second mortgage relates to a "consumer debt" as defined by § 13-101(d)(1).

59.     Defendant is a "merchant" as defined by § 13-101(g)(1) of the MCPA.

60.     Each of the parties to this action is a "person" as defined by § 13-101(h) of the MCPA.

61.     In enacting the Consumer Protection Act, the Legislature made the following Legislative Findings:

> (a)(1) The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.
>
> (2) The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.
>
> *       *       *
>
> (b)(2) The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer.

> (3) The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

Md. Code Ann., Com. Law § 13-102.

62.     In enacting the MCPA, the Legislature expressed its explicit intent as follows: "[t]his title is intended to provide minimum standards for the protection of consumers in the State."  Md. Code Ann., Com. Law § 13-103(a).[1]

63.     The Legislature also said that the MCPA "shall be construed and applied liberally to promote its purpose."  Md. Code Ann., Com. Law § 13-105.  As one court observed, "[t]he Act is intended to be liberally construed in order to achieve its consumer protection objectives."  *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013).

64.     Md. Code Ann., Com. L. § 13-303(1) prohibits unfair or deceptive practices in the sale of consumer goods, consumer services, and the extension of consumer credit.

65.     Md. Code Ann., Com. L. § 13-303(5) prohibits unfair or deceptive practices in the collection of consumer debts.

66.     Defendant violated Md. Code Ann., Com. L. § 13-301(14)(iii) by violating the MCDCA as aforesaid.

67.     Defendant violated Md. Code Ann., Com. L. § 13-301(1) by using false or

---

[1] "The 1986 amendment of the Act to include a private cause of action was designed 'to improve the enforcement' of the Act for the benefit of those consumers. *See* Report of Senate Judicial Proceedings Committee concerning Senate Bill 551 (March 7, 1986)."  *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 167, 59 A.3d 1016, 1029 (2013).

misleading oral or written statements to collect a debt.

68. Defendant violated Md. Code Ann., Com. L. § 13-301 by using an unfair practice to collect a debt.

69. A practice is unfair under the MCPA if it results in (a) a substantial injury (b) not outweighed by any countervailing benefit of the practice and (c) not reasonably avoidable by the consumer. *Legg v. Casstruccio,* 100 Md. App. 748 (1994)(adopting FTC standards for unfairness). That the practice is a violation of public policy provides additional evidence of the degree of consumer injury. *Id.* at 769.

70. Defendant's actions caused substantially injury: they prevented Mr. Jones from freely selling his home by improperly maintaining a lien on Mr. Jones' home and caused him distress and loss of apparent creditworthiness, which in turn impacted his efforts to obtain a new mortgage.

71. The damage to Plaintiff was not outweighed by any countervailing benefit to society at large: society derives no benefit from attempts to collect more money than a court has determined is owed on a claim.

72. Defendant violated Md. Code Ann., Com. L. § 13-301 by using an abusive practice to collect a debt.

73. The Merriam-Webster dictionary defines "abuse" as "1. a corrupt practice or custom . . . 2. Improper or excessive use or treatment."

74. Defendant's attempts to collect more than was owing were improper and excessive and therefore abusive.

75. Defendant's attempt to collect more than the court in the collection action awarded were improper and excessive and therefore abusive.

76. Plaintiff was damaged as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A.  An award of actual damages to be assessed by the jury;

B.  An award of reasonable attorneys fees and costs;

C.  Such other and further relief as Plaintiff's cause may require.

## COUNT III – Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 et seq. (APG Only)

77.     Plaintiff repeats the foregoing allegations as though fully set forth here.

78.     Plaintiff is a consumer under 15 U.S.C. § 1681a(c).

79.     Equifax, Experian and Trans Union are consumer reporting agencies under 15 U.S.C. § 1681a(f).

80.     Defendant furnished information to Equifax, Experian and Trans Union concerning Plaintiff.

81.     Equifax, Experian and Trans Union included the information furnished by Defendant in their credit reports on Plaintiff.

82.     Plaintiff disputed the completeness or accuracy of the information furnished by Defendant under 15 U.S.C. § 1681i(a) by writing to Equifax, Experian and Trans Union.

83.     On information and belief, Equifax, Experian and Trans Union each forwarded Plaintiff's dispute to Defendant pursuant to their obligations under 15 U.S.C. §1681i(a)(2)(A).

84.     Defendant had an obligation to conduct a reasonable investigation into Plaintiff's dispute under 15 U.S.C § 1681s-2(b)

85.     On information and belief, Defendant failed to conduct a reasonable investigation of Plaintiff's Experian dispute. This is based on Defendant's failure to even

update its reporting to Equifax from the March 2019 status, and on the fact that Defendant continued to falsely report that Plaintiff owed money on the account.

86.     On information and belief, Defendant failed to conduct a reasonable investigation of Plaintiff's Equifax dispute because the Defendant continued to falsely report that Plaintiff owed money on the account.

87.     Defendant acted willfully, because it knew of the existence of the judgment and knew that Mr. Jones had paid the judgment in full.

88.     Defendant acted willfully with respect to the Experian report because it knew that Mr. Jones' account status had changed since 2019.

**Wherefore,** Plaintiff asks for the following relief on all counts:

A.  An award of actual damages to be assessed by the jury in excess of $75,000;

B.  An award of punitive damages to be assessed by the jury;

C.  An award of reasonable attorneys fees and costs;

D.  Such other and further relief as Plaintiff's cause may require.

### COUNT IV – Defamation (APG Only)

89.     Plaintiff repeats the foregoing allegations as though fully set forth here.

90.     Defendant told the credit reporting agencies, Equifax, Experian and Trans Union that Plaintiff owed money and was delinquent.

91.     Defendant's statement was false because Plaintiff had paid his debt to Defendant in full.

92.     Defendant was legally at fault in making the statement because defendant acted at least negligently in publishing the false statement.

93.     Defendant acted with malice because it knew the that the statement was false or recklessly disregarded the falsity of the statement.

94.     Plaintiff has been specially damaged by the defamation in that its false statements to the credit reporting agencies have damaged his creditworthiness, and caused him severe emotional distress.

**Wherefore,** Plaintiff asks for the following relief on all counts:

A.  An award of actual damages to be assessed by the jury;

B.  Such other and further relief as Plaintiff's cause may require.


**COUNT V – Invasion Of Privacy – Intrusion Upon Seclusion (APG Only)**

95.     Plaintiff repeats the foregoing allegations as though fully set forth here.

96.     APG called Mr. Jones several times after he paid off the account.

97.     APG called Mr. Jones, at one point, on a daily basis.

98.     APG sent emails to Mr. Jones seeking to collect on the account after Mr. Jones had paid it off.

99.     APG coerced Mr. Jones to make a further payment, even though he had already paid off the account.

100.    Having coerced Mr. Jones to make a payment on the promise that it would protect his creditworthiness, APG then told Mr. Jones that actually, it would report him as late anyway.

101.    In attempting to collect an alleged debt which had already been fully adjudicated and paid off, APG acted with malice, fraudulent and with intent to injure Mr. Jones.

102.    APG's intrusion into Mr. Jones' privacy, private affairs and seclusion would be highly offensive to the reasonable person.

103.    APG's intrusion into Mr. Jones' privacy, private affairs and seclusion was

highly offensive to Mr. Jones.

104.   APG's intrusion into Mr. Jones' privacy, private affairs and seclusion was intentional, willfully and in addition:

    a.  They were calculated to cause damage of loss to Mr. Jones by forcing him to pay money that he did not owe;

    b.  They were done with the unlawful purpose of causing the damage and loss without justifiable cause or right; and

    c.  Actual damage and loss resulted to Mr. Jones.

105.   APG's intrusion into Mr. Jones' privacy, private affairs and seclusion proximately caused Mr. Jones further emotional distress with physical manifestations as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A.  An amount to be determined by the jury for actual damages in in excess of $75,000;

B.  Punitive damages in an amount to be determined by a jury;

C.  Such other and further relief the nature of the Plaintiff's cause may require.

### COUNT V – Action For Specific Performance (APG Only)

106.   Plaintiff repeats the foregoing allegations as though fully set forth here.

107.   The property in this action is 507 Orchid Court, Edgewood, MD 21040.

108.   The legal description of the property is:

> All that lot or parcel of land situate and lying in the FIRST ELECTION DISTRICT of Harford County, State of Maryland, being known and designated as Lot No. 43, as shown on a plat entitled "Plat 1, Section II, Phase I, Otter Creek Landing", which plat is recorded among the Land Records of Harford County, in Plat Book No. 83, folio 75. The improvements thereon being known as No. 507 Orchid Court, Edgewood,

MD 21040. (Tax ID # 01-288121)

BEING the same and all the land described in and conveyed by a Deed dated May 27, 2005 from Charles Aristidou and Patricia Aristidou to Rodney T. Jones and Linnetta D. Jones and recorded among the Land Records of Harford County in Liber No. 6074, folio 211.

109.     Plaintiff is in actual peaceable possession of the property.

110.     Plaintiff and Mrs. Jones are the title owners of the property, as provided by the deed from its prior owner to Mr. and Mrs. Jones, recorded in the Land Records of Harford County at Liber 6074, Folio 211.

111.     Defendant claims to hold a deed of trust on the property, recorded in the Land Records of Harford County at Liber 7007, Folio 124.

112.     The deed of trust secured "(i) repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."

113.     The deed of trust provided that:

Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

114.     Plaintiff has paid all sums secured by the Deed of Trust, by satisfying the judgment obtained by APG on the note which the mortgage secured.

115.     Defendant has not returned the note to Plaintiff or released the Deed of Trust.

116.     The balance of the equities favors an order for specific performance:

because Plaintiff has paid all sums secured, Defendant will not be prejudice by the release of the lien. The existence of the lien interferes with Plaintiff's ability to sell the property.

**Wherefore,** Plaintiff asks for the following relief:

D.  An Order requiring Defendant to release the deed of trust and deliver to Plaintiff a signed release for recordation in the land records.

E.  An Order requiring Defendant to return to Plaintiff the note, marked "paid".

## COUNT VI – Fair Credit Reporting Act ("FCRA") , 15 U.S.C. § 1681 et seq. (Equifax and Experian)

117.    Plaintiff repeats the foregoing allegations as though fully set forth here.

118.    Plaintiff is a consumer within the meaning of 15 U.S.C. § 1681a(c) because he is an individual.

119.    Equifax and Experian ("CRA Defendants") are Consumer Reporting Agencies within the meaning of 15 U.S.C. § 1681a(f) because they are persons who "for monetary fee . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and . . . use[] . . . means . . . of interstate commerce for the purpose."

120.    The CRA Defendants were required to "follow reasonable procedures to assure maximum possible accuracy of the information" when preparing a consumer report. 15 U.S.C. § 1681e(b).

121.    The CRA Defendants each prepared consumer reports concerning Plaintiff after he had disputed the fraudulent accounts.

122.    The CRA Defendants included in their reports false information despite

Plaintiff's disputes.

123.    On information and belief, the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in their reports concerning Plaintiff.

124.    On information and belief, it is the CRA Defendants' policy to parrot the responses transmitted to them by furnishers through the e-OSCAR system.

125.    The e-OSCAR system provides for no narrative response by furnishers, and the CRA Defendants receive no evidence, documentation or explanation for the responses given to a dispute by furnishers.

126.    On information and belief, it is the CRA Defendants' policy not to require evidence, documentation or explanation from a furnisher, even when a disputing consumer has attached documentary evidence.

127.    The CRA Defendants had an obligation to "conduct a reasonable reinvestigation to determine whether the disputed information [was] accurate" within 30 days from receipt of the dispute. 15 U.S.C. § 1681i(a)(1)(A).

128.    The CRA Defendants failed to conduct such an investigation, instead parroting the responses of APG.

129.    The CRA Defendants had an obligation to delete or modify any information "found to be inaccurate or incomplete or [which] cannot be verified."

130.    The CRA Defendants did not correct the inaccurate information.

131.    Here, the CRA Defendants received detailed disputes supported by documentary evidence: they included the notice of satisfaction, filed by APG in the collection action.

132.    Nevertheless, the CRA Defendants failed to conduct an adequate investigation instead choosing to parrot APG's inaccurate verification of the information

reported.

133.    Further, Experian ignored clear evidence that something was wrong with the information reported by APG: it had not reported new information since 2019, yet the notice of satisfaction showed beyond question that *something* had happened with respect to the account in the meantime.

134.    The CRA Defendants acted willfully in failing to conduct a reasonable reinvestigation and failing to delete unverifiable information.

135.    In the alternative, the CRA Defendants acted negligently.

136.    Plaintiff was damaged as aforesaid.

**Wherefore**, Plaintiff seeks the following relief:

A.  An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

B.  An amount of punitive damages to be determined by the jury in excess of $75,000;

C.  An award of costs and reasonable attorneys' fees to Plaintiff;

D.  Such other and further relief the nature of the Plaintiff's cause may require.

137.

Respectfully submitted,

Dated: July 30, 2021

By:  _/s/ Emanwel J. Turnbull_
      Emanwel J. Turnbull
      CPF# 1606210269
      The Holland Law Firm, P.C.
      914 Bay Ridge Rd, Ste 230
      Annapolis, MD 21403
      Telephone: (410) 280-6133
      Facsimile: (410) 280-8650

eturnbull@hollandlawfirm.com

Peter A. Holland
Fed. Bar No. 10866
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: July 30, 2021

By:  _/s/ Emanwel J. Turnbull_____
Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

_Counsel for Plaintiff_